IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) Civ. No. 4:22-cv-00130-CDL ) ) |
| BRENT HESSELINK, | ) ) ) |
| Respondent. | ) |

ORDER GRANTING PRELIMINARY INJUNCTION

This matter is before the Court on the Petition for Order Compelling Arbitration ("Petition") filed by Petitioner American Family Life Assurance Company of Columbus ("Aflac" or "Petitioner"). The Court held a hearing on this matter via videoconference on Friday, September 9, 2022, at which counsel for Petitioner appeared. Neither Respondent Brent Hesselink ("Respondent") nor his counsel have appeared in this matter to date, but they were given notice of the hearing. Having reviewed the pleadings, declarations, and exhibits filed, and being advised of the issues at the hearing and otherwise, the Court makes the following findings of fact and conclusions of law:

FINDINGS OF FACT

1. This is a petition to compel arbitration brought under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. Aflac is a Nebraska corporation headquartered in Columbus, Georgia, which is engaged in the business of providing supplemental life, health, and accident insurance. Respondent is a former independent contractor sales agent with Aflac, who entered into an

Associate's Agreement to market Aflac insurance products in or around March 2019. Respondent purports to be a resident and citizen of the State of California.[1]

2.     Petitioner filed its Petition on August 25, 2022. (ECF No. 1.) Petitioner seeks an order from this Court compelling Respondent to submit to binding arbitration, on an individual basis, certain claims he has asserted against Petitioner in a lawsuit filed in the Superior Court of the State of California for the County of Orange, Case No. 30-2020-01161586-CU-OE-CXC (the "California Action").

3.     In addition to an order compelling Respondent to submit the subject claims to arbitration on an individual, non-class, non-representative basis, Petitioner also asks the Court to enjoin Respondent from taking any further actions to prosecute the California Action in court and to cease and dismiss the California Action in its entirety. In support of its requests, Petitioner relies upon an arbitration provision contained in Respondent's Associate's Agreement. (Strickland Dep. Ex. 1, Aflac Associate's Agreement ¶ 10, ECF No. 4-3 [hereinafter Associate's Agreement].)

4.     In the California Action, Respondent alleges claims for civil penalties under the California Labor Code Private Attorneys General Act of 2004 ("PAGA") on behalf of himself and a putative class of allegedly aggrieved plaintiffs. Respondent's claims relate to (1) his and other putative class members' classification as independent contractors under the Associate's Agreement; (2) the compensation he and other putative class members were paid by Aflac pursuant to the Associate's Agreement; and (3) the terms and conditions of his and other putative class members' alleged "employment" with Aflac, including Aflac's alleged failure to maintain certain

---

[1]     Aflac personally served Respondent with the Petition and other pleadings in this matter at an address located in Texas. Nonetheless, regardless of whether Respondent resides in California or Texas, this Court still has diversity jurisdiction over this action.

employment records and to provide Respondent with rest and meal periods, reimbursements and other employment benefits as a result of his alleged misclassification as an independent contractor. As alleged in the Petition, Respondent's California Action asserts claims for various penalties, damages and other forms of relief that, particularly on a class-wide basis, would exceed $75,000.00 if Respondent were to succeed on his claims.

5. The California Action has been stayed since January 2022 as a result of the U.S. Supreme Court granting *certiorari* in December 2021 of *Viking River Cruises, Inc. v. Moriana* (No. 20-1573, June 15, 2022), which would directly address whether PAGA claims can be subject to private arbitration agreements. Given its potentially dispositive effect on Respondent's lawsuit, the California court stayed the California Action pending the Supreme Court's decision. In June 2022, *Viking River* was decided, and the California court then extended the stay of the California Action until October 26, 2022, to allow the parties time to address the effect of *Viking River* on Respondent's claims. To that end, Aflac filed its Petition with this Court seeking to enforce the arbitration agreement following the Supreme Court's *Viking River* decision, and to compel Respondent to submit his claims against Aflac to individual arbitration in accordance with his Associate's Agreement.

6. As alleged in the Petition, Respondent executed his Associate's Agreement on or around March 8, 2019, and it became effective upon Aflac's countersignature executed on or around March 22, 2019. Respondent's Associate's Agreement with Aflac was terminated on May 5, 2020.

7. Paragraph 10 of Respondent's Associate's Agreement contains an arbitration agreement providing that, with certain exceptions not applicable here, "any dispute arising under or related in any way to this Agreement ('Dispute'), to the maximum extent allowed under the

Federal Arbitration Act ('FAA'), shall be subject to mandatory and binding arbitration, including any Dispute arising under federal, state or local laws, statutes or ordinances[.]" (*Id.* ¶ 10.1.) The Associate's Agreement further prohibits Respondent from bringing an action in any forum in a representative capacity without Aflac's consent, providing that "[t]here shall be no consolidation of claims or class actions without the consent of all parties." (*Id.* ¶ 10.4.)

8. The Associate's Agreement also provides that "[a]ny party may seek an order of any court of competent jurisdiction to enforce this Arbitration Agreement. It is agreed that Aflac may bring such action in any federal or state court in the State of Georgia and Associate hereby consents to personal jurisdiction and venue in such court." (*Id.* ¶ 10.3.) Additionally, the Associate's Agreement states that "[a]ny court of competent jurisdiction is authorized to issue any injunctive or other equitable relief in aid of arbitration, including without limitation a temporary restraining order or preliminary injunction[.]" (*Id.* ¶ 10.5.)

9. Respondent was personally served with a summons and copies of the Petition and its accompanying pleadings on August 26, 2022. (Proof of Service 1, ECF No. 5.) Aflac also served an electronic copy of the Petition on Respondent's counsel in the California Action via email on August 29, 2022. Respondent has not asserted any challenge to service. The Court finds that service was proper and that Respondent was properly notified of the Petition.

10. On September 6, 2022, Petitioner filed a motion requesting that the Court hold a hearing on this matter on September 9, 2022. (Mot. for Expedited Review and Hr'g of Pet. for Order Compelling Arbitration, ECF No. 7.) Also on September 6, 2022, Petitioner served a copy of its Motion for Expedited Review and Hearing of Petition for Order Compelling Arbitration and accompanying pleadings on Respondent via UPS Next Day Air, and also served an electronic copy of same on Respondent's counsel in the California Action via email.

11.     On September 7, 2022, the Court granted the motion for expedited hearing and set a hearing on the Petition for September 9, 2022, at 9:00 a.m., to be held virtually via Zoom. Also on September 7, 2022, Petitioner served on Respondent via UPS Next Day Air and personally, a letter notifying Respondent of the upcoming hearing on September 9, 2022, and providing the Zoom meeting information for the hearing, along with copies of the docket entries setting the hearing. On September 7, 2022, Petitioner also served an electronic copy of that letter and its exhibits on Respondent's counsel in the California Action via email.

12.     Neither Respondent nor his counsel appeared at the hearing on September 9, 2022. As explained below, the Court finds that Respondent's non-appearance was not due to a lack of proper notice of the hearing, nor to any other good cause or justifiable excuse.

13.     On September 7, 2022, Respondent's California counsel responded to Petitioner's email giving notice of the hearing with a message indicating that Respondent was aware of the September 9, 2022 hearing, and further stating that neither Respondent nor his counsel planned to appear for the hearing. The reasons given, which Respondent's counsel asked Petitioner's counsel to relay to the Court at the hearing, were:

1) Respondent claims the Petition was filed in violation of the current stay of proceedings in the California Action;

2) Respondent claims the only proper venue for adjudicating claims between the parties is the California Action in California; and

3) Respondent claims that the Middle District of Georgia is prohibited from enjoining state court proceedings under 28 U.S.C.S. § 2283.

14.     Petitioner shared the aforementioned arguments with the Court at the hearing and advanced Petitioner's counterarguments. Petitioner's position on these issues, with which the Court agrees, is as follows:

5

1) The Petition is a separate and independent proceeding from the State Court Action, filed by different counsel, in a different state, and in federal rather than state court. Aflac's filing of the Petition with this Court cannot reasonably be construed as an action taken in pursuit or defiance of the State Court Action in violation of the stay in that case.

2) The Petition seeks enforcement of a contract between Petitioner and Respondent that contains an arbitration provision, which Petitioner claims Respondent has breached by filing the State Court Action. The contract on which the Petition expressly provides that a party may seek an order of court to enforce the arbitration provision, and that Petitioner "may bring such action in any federal or state court in the State of Georgia and [Respondent] hereby consents to personal jurisdiction and venue in such courts."

3) Neither party disputes that this Court is prohibited under 28 U.S.C.S. § 2283 from enjoining the California state court from taking any action with respect to the State Court Action, but this is not the relief that Petitioner seeks. Rather, Petitioner seeks to enjoin the conduct of Respondent, as an individual, to prevent him from taking any further actions in breach of his arbitration agreement with Petitioner.

15. For the reasons explained above, the Court finds that Respondent was properly served with the pleadings in this matter, that he was provided adequate prior notice of the hearing on September 9, 2022, and that he failed to appear for the hearing without justification, excuse or other good cause shown.

## CONCLUSIONS OF LAW

1. The Federal Rules of Civil Procedure govern proceedings relating to arbitration except as otherwise provided in 9 U.S.C. *See* Fed. R. Civ. P 81(a)(6)(B). The Federal Arbitration Act treats petitions to compel arbitration as "motions." 9 U.S.C. § 6; *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 nn. 26-27 (1983) (recognizing 9 U.S.C § 6 treats petitions to compel arbitration under § 4 as motions). Therefore, to the extent that the Federal Rules of Civil Procedure conflict with treating the Petition as a "motion" as opposed to an "action," those rules shall not apply. Under Local Rule 7.2, responses to motions must be served within 21 days of service of the motion. *See* M.D. Ga. R. 7.2 ("Respondent's counsel desiring to submit a response . . . shall serve the same within twenty-one (21) days after service of movant's motion and brief.").

2. Here, Respondent was served with the Petition on August 26, 2022. Respondent's original deadline to file a written response to the Petition was therefore 21 days later, on Friday, September 16, 2022. Respondent was also properly notified, however, that Petitioner was seeking an expedited review of the Petition, and that a hearing would be held on the Petition on September 9, 2022. Thus, Respondent arguably had until that date to submit any evidence and argument he wished for the Court to consider. Although he was aware of the hearing and had an opportunity to submit any evidence and argument for the Court's consideration, he chose not to do so or to otherwise appear at the hearing at all. The Court therefore treats Petitioner's Petition as a motion to which no response was made and considers the merits of the Petition based upon the present record.

3. To ensure, however, that Respondent has had a full and fair opportunity to be heard in this matter, and because Respondent's original time period for filing a written response to the Petition has not yet expired, the Court has decided to grant the relief described herein on a preliminary basis at this time. After Respondent's September 16, 2022 deadline to file a written response to the Petition has passed, the Court shall review any additional pleadings on file at that time and determine whether to convert the preliminary injunction entered today into a permanent injunction.

4. The Court concludes that it has jurisdiction over Respondent in this matter. The FAA provides that a petition to compel arbitration may be brought in "any United States district court" that would have jurisdiction under Title 28 of the United States Code. *See* 9 U.S.C. § 4. As noted above, Petitioner is a corporate citizen of Nebraska and Georgia, and Respondent purports to be a citizen of California[2], and the amount in controversy in the California Action exceeds

---

[2] Alternatively, Respondent may be a citizen of Texas, which has no material effect on the applicability of diversity jurisdiction in this matter.

$75,000.00. Accordingly, the Court concludes that it has diversity jurisdiction over this motion under 28 U.S.C. § 1332.

5.  With respect to personal jurisdiction, it is well-settled that a court sitting in Georgia has personal jurisdiction over a defendant who contractually agrees to jurisdiction in this State. *See, e.g., Gill v. Nicol,* No. 4:11-CV-168 CDL, 2012 WL 1358490, at *4 (M.D. Ga. Apr. 19, 2012) ("A nonresident can consent to personal jurisdiction in Georgia if the nonresident enters into a contract that contains a Georgia forum selection clause, so long as the forum selection clause is enforceable." (citing *OFC Cap. v. Colonial Distribs., Inc*., 648 S.E.2d 140, 141, 43 (Ga. Ct. App. 2007))); *Dixie Homecrafters, Inc. v. Homecrafters of Am., LLC,* No. 1:08-CV-0649-JOF, 2009 WL 596009, at *5-6 (N.D. Ga. Mar. 5, 2009) (finding that defendants had consented to personal jurisdiction in Georgia courts through a forum selection clause in a nondisclosure agreement).

6.  Respondent's Associate's Agreement contains a valid forum selection clause providing that Aflac may bring an action to enforce the arbitration provision "in any federal or state court in the State of Georgia and Associate hereby consents to personal jurisdiction and venue in such court." (Associate's Agreement ¶ 10.3.) Accordingly, the Court concludes that Respondent consented to jurisdiction and venue being proper in this Court, and that this Court has such personal jurisdiction over Respondent by virtue of his contractual agreement with Aflac and other contacts with Georgia as alleged in the Petition. The Court further concludes that its exercise of personal jurisdiction over Respondent comports with both constitutional due process requirements and the Georgia long-arm statute, which expressly confers jurisdiction over a nonresident defendant who, among other bases, "[t]ransacts any business within this state." O.C.G.A. § 9-10-91(1).

7.  Having expressly found jurisdiction exists to consider this matter, the Court next addresses the merits of the Petition. Pursuant to Section 4 of the FAA, a federal district court with

jurisdiction over a matter shall enforce a valid arbitration agreement between two parties by compelling a dispute covered by that agreement to proceed in arbitration when the requirements for enforcement are met. 9 U.S.C. § 4. As the Eleventh Circuit Court of Appeals has explained, "the FAA requires a court to . . . compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (internal quotation marks omitted) (citing 9 U.S.C. §§ 2–4).

8. As to the first element under Section 4 of the FAA, Petitioner has presented sworn evidence that it entered into a fully valid and enforceable written Associate's Agreement with Respondent in or around March 2019, and that Paragraph 10 of the Associate's Agreement contains a similarly valid and enforceable arbitration agreement under Georgia law. No evidence has been presented to refute Petitioner's affidavits which support the validity and enforceability of the Agreement. Based on the present record, the Court concludes that Respondent's Associate's Agreement is a valid and binding contract under Georgia law, and that the arbitration agreement contained in Paragraph 10 of the Associate's Agreement is likewise valid and enforceable under ordinary state-law contract principles and the FAA.

9. As to the second element under Section 4 of the FAA, the arbitration agreement at issue provides that it applies to "any dispute arising under or related in any way to" Respondent's Associate's Agreement, "including any Dispute arising under federal, state or local laws, statutes or ordinances[.]" (Associate's Agreement ¶ 10.1.) As noted above, Respondent's claims in the California Action relate to (1) his and other putative class members' classification as independent contractors under the Associate's Agreement; (2) the compensation he and other putative class members were paid by Aflac pursuant to the Associate's Agreement; and (3) the terms and

conditions of his and other putative class members' alleged "employment" with Aflac, including Aflac's alleged failure to maintain certain employment records and to provide Respondent with rest and meal periods, reimbursements and other employment benefits as a result of his alleged misclassification as an independent contractor. As such, the Court concludes that all of Respondent's claims in the California Action fall within the scope of the arbitration provision in Paragraph 10 of his Associate's Agreement, as they are disputes "arising under or related in any way to" the Associate's Agreement governing his relationship with Aflac. (*Id.*)

10. Additionally, the Court concludes that Paragraph 10.4 of Respondent's Associate's Agreement contains a valid waiver of his right to act as a representative to bring claims against Aflac on a collective and/or class-wide basis. *See Webb v. Doordash, Inc.*, 451 F. Supp. 3d 1360, 1368 (N.D. Ga. 2020) (noting that "[t]he Eleventh Circuit has held 'arbitration agreements precluding class action relief are valid and enforceable.'" (quoting *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 877-78 (11th Cir. 2005))); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005) (holding a class action waiver did not render an arbitration agreement unconscionable); *Randolph v. Green Tree Fin. Corp.-Ala.*, 244 F.3d 814, 819 (11th Cir. 2001) (holding an arbitration agreement was enforceable even if it included a class action waiver); s*ee also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) ("[A]s a matter of law the answer is clear. In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms – including terms providing for individualized proceedings."); *AT&T Mobility v. Concepcion*, 563 U.S. 333, 344 (2011) (holding the FAA preempted a state rule rejecting class actions waivers in arbitration agreements as unconscionable because "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.").

11.     Further, *Viking River* has now been decided, and the Supreme Court's decision makes clear that Respondent's individual PAGA claim is subject to his arbitration agreement with Aflac. 142 S. Ct. at 1910. Additionally, the Supreme Court further held that a PAGA plaintiff whose individual claim has been compelled to arbitration "would lack statutory standing to maintain her non-individual claims in court," so the only "correct course" would be to dismiss the remaining non-individual claim. *Id.* at 1925. Accordingly, in addition to contractually waiving his right to act as a class representative in a collective action against Aflac, Respondent also lacks standing to continue prosecuting the State Court Action on behalf of other allegedly aggrieved plaintiffs.

12.     In light of the above findings of fact and conclusions of law, the Court finds that both of the requirements for arbitrability under Section 4 of the FAA are met in this case.

## PRELIMINARY INJUNCTION STANDARD

13.     "The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United States v. Alabama*, 791 F.2d 1450, 1459 (11th Cir. 1986). To support a preliminary injunction, a district court need not find that the evidence positively guarantees a final verdict in a plaintiff's favor. *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1985). Rather, to prevail on a motion for a preliminary injunction, Aflac must show that: (1) it is substantially likely to succeed on the merits of its claims; (2) it will suffer a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs the harm an injunction may cause; and (4) granting the injunction would not disserve the public interest. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211 (11th Cir. 2008). The decision whether to grant a preliminary injunction is vested in the Court's broad discretion, and the Court's factual findings

will not be disturbed absent clear error. *S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 731 (11th Cir. 2005) (per curiam).

14. For the reasons set forth above, the Court finds Aflac is substantially likely to succeed on the merits of its argument that Respondent is obligated to submit his threatened claims to binding arbitration. As an initial matter, Respondent expressly agreed that Aflac may bring an action in a state or federal court in Georgia to enforce his arbitration agreement, and "[a]ny court of competent jurisdiction is authorized to issue any injunctive or other equitable relief in aid of arbitration, including without limitation a temporary restraining order or preliminary injunction[.]" (Associate's Agreement at ¶¶ 10.3, 10.5) (emphasis added). Furthermore, Respondent's arbitration agreement is fully valid and enforceable under the Federal Arbitration Act ("FAA").

15. A preliminary injunction is also necessary to prevent Respondent from immediately breaching his contractual agreement and causing Aflac irreparable harm. Through his attorneys, Respondent has evidenced his intention to disregard his obligation to arbitrate his disputes with Aflac and, if not enjoined from doing so, will likely continue to pursue his PAGA claims in California court. Moreover, despite the California court extending the stay in that action to October 26, 2022, Respondent's counsel contacted Aflac's counsel seeking discovery on August 22, 2022, and Respondent's counsel also emailed the court clerk in the State Court Action on August 31, 2022 to request a discovery conference regarding discovery issues. (Hudson Declaration ¶ 8,9, ECF 7-2.) Respondent's counsel then served Aflac with a deposition notice of Aflac's "Person Most Qualified" scheduled for September 16, 2022. (*Id.* at ¶ 10.) Aflac thus has every indication that Respondent intends to ignore *Viking River* and continue to pursue the State Court Action in breach of his arbitration agreement as soon as – if not before – the stay is lifted.

Aflac will incur substantial cost in time and resources resulting from Respondent's breach of his agreement.

16.     The equities in this case also weigh in favor of injunctive relief, as the threat of harm to Aflac from not issuing the injunction outweighs the potential harm, if any, to Respondent should the injunction be granted.  Aflac seeks to temporarily enjoin Respondent from pursuing his claims in a court until this Court can determine, on a permanent basis, whether Respondent is bound to arbitrate his claims instead. Respondent's threatened claims are not of such a nature that imposition of the preliminary injunction will cause him any appreciable harm, especially considering the California Action is stayed until October 26, 2022.  In contrast, the harm to Aflac from having to defend those claims in California state court, as opposed to in arbitration as set forth in his Associate's Agreement, would be substantial.

17.     Finally, the public interest is best served by requiring Respondent to honor his enforceable contractual obligations, as well as by the quick interpretation and resolution of contract issues through arbitration.  *See Rash v. Toccoa Clinic Med. Associates*, 253 Ga. 322, 326 (1984) ("It is the policy of this state to uphold and protect valid contractual rights and obligations.").

18.     Accordingly, the Court preliminarily GRANTS the Petition and hereby ORDERS an ADJUDGES as follows:

    a.     In accordance with Paragraph 10 of his Associate's Agreement and pursuant to the FAA, Respondent is hereby ORDERED to submit any and all claims he has against Aflac arising out of or relating in any way to his contractual engagement with Aflac to binding arbitration on an individual basis, to the extent he wishes to pursue any such claims, including without limitation the PAGA claims alleged by Respondent in the complaint he filed in *Hesselink v.*

*American Family Life Assurance Company of Columbus*, Case No. 30-2020-01161586-CU-OE-CXC, in the Superior Court of the State of California for the County of Orange; and

      b.      In accordance with Paragraph 10.5 of his Associate's Agreement, Respondent is hereby ENJOINED from taking any further steps to prosecute against Aflac any claims, including the pending PAGA claims, arising out of or relating in any way to his contractual engagement with Aflac, other than through arbitration on an individual basis pursuant to the terms of Respondent's Associate's Agreement.

This preliminary injunction shall remain in effect until such time as this Court enters a final Order on Aflac's Petition for Order Compelling Arbitration. The Court finds that Petitioner is fully capable of paying any costs and damages caused to Defendant if it is determined that Defendant was wrongfully enjoined, and therefore, the Court does not require Petitioner to post additional security at this time.

This **12th** day of **September, 2022**.

                                                  S/Clay D. Land
                                                  HON. CLAY D. LAND
                                                  U.S. DISTRICT COURT JUDGE